**CORRECTED**

# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-2251V
UNPUBLISHED

| | |
|---|---|
| SHERRI ALLEN,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>       Respondent. | Chief Special Master Corcoran<br><br>Filed: March 13, 2025 |

*Heather Marie Schneider*, The Locks Law Firm, Philadelphia, PA, for Petitioner.

*Christopher Pinto*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On December 2, 2021, Sherri Allen filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 24, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

### I. Relevant Procedural History

On March 6, 2023, Petitioner filed a motion for a ruling on the record, arguing that she can establish a Table SIRVA claim. Petitioner's Motion for a Ruling on the Record ("Mot."), ECF No. 22. Respondent filed a Rule 4(c) Report in opposition on July 5, 2023. Respondent's Response to Motion for Ruling on the Record and Rule 4(c) Report ("Opp.") (ECF No. 37). The matter is ripe for resolution.

### II. Petitioner's Medical Records

Petitioner's medical history is significant for pericarditis, myocardial infarction, cardiac stent, cardiac catheterization, hypertensive disorder, and obesity. Ex. 2 at 19-20, 27; Ex. 3 at 13, 34; Ex. 16 at 1501. On October 24, 2019, Petitioner received a flu vaccine in her right shoulder. Ex. 1 at 1; Ex. 2 at 1. That same day, Petitioner contacted Allergy Partners and reported a large, painful vaccine reaction, including swelling. Ex. 2 at 54.

Petitioner again reported shoulder problems on October 28, 2019. She stated to immunologist Dr. Gary Gross that she had numbness in her right arm and shooting pain from her wrist to the right side of her neck. Ex. 2 at 2. Petitioner also stated that she spoke with "Dr. Zecca over the weekend" who told her the vaccination "likely hit a nerve." *Id.*

Petitioner was next seen by Dr. Rafiya Khakoo, a neurologist, on October 28, 2019. She reported tenderness of the cervical spine, lumbar spine, and decreased range of motion. Ex. 5 at 9. She was assessed with cervical radiculopathy and ulnar neuropathy among other ailments. *Id.* at 10. On October 29, 2019, Petitioner called Allergy Partners, and Dr. Gross noted that her new neurologist had proposed that Petitioner's conditions included "ulnar neuropathy and cervical radiculopathy." Ex. 2 at 56.

An EMG performed on November 5, 2019, showed evidence of right cervical radiculopathy at the C8 location. Ex. 5 at 5. Petitioner returned to Dr. Gross on November 11, 2019. The history of her illness includes "C8 damage – motor and sensory damage…. She has spasm of the lateral 2 fingers of her right hand…." Ex. 2 at 6. His impression was poorly controlled cervical radiculopathy, and noted weakness of her right arm. Ex. 2 at 8. She was wearing a brace at the time, and had been prescribed Neurontin, a nerve pain medication. *Id.* at 6.

On November 18, 2019, Petitioner saw Dr. Gregory Cartnick, now reporting feeling instant burning when she was vaccinated in October. Ex. 3 at 29. She also reported pain from her neck to her right hand. *Id.* A referral for pain management was recommended. *Id.* at 30.

2

Petitioner started physical therapy on November 19, 2019, for right shoulder and neck pain, numbness in her right fourth and fifth fingers, right arm numbness and burning, and the inability to raise her right arm. Ex. 6 at 23. She attended eleven physical therapy sessions between November 2019 and January 10, 2020. *Id.* at 1.

Petitioner returned to Dr. Gross three times between November 25 and December 23, 2019. Ex. 2 at 11, 16, 20. She continued to report shoulder, neck, arm, and hand problems, including numbness, pain and weakness in her shoulder and neck. Ex. 2 at 11, 16, 20. She also reported numbness, pins and needles in the last two digits of her right hand. *Id.*

Between February 13 and June 19, 2020, Petitioner attended ten occupational therapy sessions for complex regional pain syndrome in her right upper extremity. Ex. 4 at 36-37, 315-16. At her initial evaluation the diagnosis was complex regional pain syndrome type 2 of right upper extremity. *Id.* at 36

Petitioner saw Dr. Gross again on February 14, 2020. Ex. 2 at 24. He noted that Petitioner was "newly diagnosed with SIRVA with [] bursa injury and CRPS – Complex Regional Pain Syndrome type II of right shoulder." Ex. 2 at 24. However, his impression remained cervical radiculopathy. *Id.* at 26.

An MRI on February 15, 2020, showed mild bursitis, but no evidence of a rotator cuff tear. Ex. 15 at 52. A cervical spine MRI that same day showed disc bulging at levels "C3-C4, C4-C5, C5-C6". *Id.* at 64. A second EMG study was performed on June 16, 2020. Ex. 4 at 267-68. Dr. Parikh noted that the study was normal, with no evidence of cervical radiculopathy. *Id.* at 268.

Petitioner saw Dr. Parikh again on June 17, 2020. She continued to complain of should pain, intermittent pins and needles in her right forearm, as well as headaches. Occipital nerve block was recommended at that time. Ex. 4 at 280.

A second MRI of her right shoulder was performed on June 19, 2020. Ex. 15 at 26. Dr. Parikh discussed it with Petitioner, noting that the MRI showed a partial thickness tear, tendinosis, arthritis, among other findings. Ex. 4 at 354.

Petitioner saw an orthopedist on July 2, 2020. Ex. 7 at 4. She was diagnosed with shoulder pain, impingement syndrome, an incomplete rotator cuff tear, and osteoarthritis of her right shoulder. *Id.* at 7. She received a steroid injection, and an at-home exercise program was recommended. *Id.* at 6. By July 17, 2020, Petitioner was able to use her

3

arm from the elbow down and was experiencing no numbness, but still reported reduced strength. Ex. 2 at 39.

Petitioner's last report of shoulder pain occurred on August 17, 2020, at a visit to Dr. Parikh. Ex. 4 at 382-83. Dr. Parikh noted Petitioner continued to complain of shoulder pain and requested pain medication. *Id.* at 382-83. She was informed that conservative treatment was necessary, including physical therapy. *Id.*

### III.    Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

4

>  (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

5

### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. And I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain the same day as she received the vaccination. Ex. 2 at 54. Accordingly, there is preponderant evidence that establishes the onset of Petitioner's shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Respondent claims that Petitioner cannot establish that her pain was limited to her shoulder, because she also reported shooting pain from her right wrist to her neck, and numbness from the fourth and fifth digits to the mid-portion of her right arm. Opp. at 8-9. While Respondent's argument has merit, it ultimately fails to rebut Petitioner's Table showing.

The record does contain reports of non-shoulder pain and numbness in her neck and down Petitioner's arm, but at the same time consistently identifies pain in her right shoulder. Ex. 3 at 29, Ex. 6 at 23, Ex. 2 at 11. Additionally, Petitioner was also diagnosed with a SIRVA and a bursa injury in February of 2020. Ex. 2 at 24.

Thus, Petitioner has reported some symptoms likely unrelated to her SIRVA, such as numbness in her right fingers and pain in her arm and neck. She was also diagnosed with complex regional pain syndrome of the right shoulder, and displayed some signs of cervical radiculopathy. *See* Ex. 2 at 26 (record from February 14, 2020, diagnosing Petitioner with cervical radiculopathy); Ex. 4 at 267-68 (record from June 16, 2020, with no evidence of radiculopathy). The mere existence of such record complaints, however, does not defeat a showing that Petitioner not only did experience shoulder-specific pain, but that her complaints and treatment efforts were aimed at that. Petitioner has therefore

met this QAI (although non-SIRVA issues and pain reports will be distinguished in calculating Petitioner's damages).

### 4. There is No Evidence of Another Condition or Abnormality

The last criterion for a Table SIRVA requires proof of an absence of any other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent argues that Petitioner was diagnosed with numerous conditions that are not consistent with a SIRVA, including cervical radiculopathy, acromioclavicular arthritis, osteoarthritis, and complex regional pain syndrome. Opp. at 9. Respondent notes that any of these conditions would explain Petitioner's symptoms. Opp. at 9.

However, Petitioner continually attributed her pain to the flu vaccine and was affirmatively diagnosed with a SIRVA. Ex. 2 at 24. And the record overall preponderates in favor of the conclusion that the vaccine's administration better explains her injury, even if treaters had difficulty pinpointing a likely cause.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 24, 2019, in the United States. Ex. 1 at 1, Ex. 2 at 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). Further, Petitioner suffered the residual effects of her injury for more than six months. Ex. 7 at 4; *see* Section 11(c)(1)(D). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 10 at 2; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation.

## Conclusion

In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master